**HERBERT DEMETRIUS MCINTOSH,**          *
                                        *
    **Petitioner,**                     *
                                        *          **CIVIL NO. 10-00152-WS-B**
**vs.**                                  *          **CRIM. NO. 07-00189-KD**
                                        *
**UNITED STATES OF AMERICA,**            *
                                        *
    **Respondent.**                     *

<u>**ORDER**</u>

Pending before the Court is Petitioner Herbert Demetrius McIntosh's Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 130)[1], the Government's Response thereto (Doc. 137), and Petitioner's Reply (Doc. 138). This action has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration. Following a complete review of this action, the undersigned finds that an evidentiary hearing is necessary in order to resolve McIntosh's claim that his trial counsel was ineffective for failing to object to judicial participation in

---

[1] The Court permitted Petitioner to amend his Section 2255 petition on several occasions (Docs. 107, 108, 114, 130). However, a review of the petitions reflects that the current petition (Doc. 130) represents Petitioner's complete amended Section 2255 petition.

plea negotiations.

**BACKGROUND**

On June 28, 2007, Petitioner Herbert Demetrius McIntosh and an accomplice were indicted on a two-count indictment for conspiracy to possess and possession with intent to distribute 5 kg of cocaine, which subjected McIntosh to the penalty provision of 841(b)(1)(B). (Doc. 3). McIntosh retained attorney Pete J. Vallas to represent him through the pretrial, plea negotiation, and sentencing portion of his case. McIntosh pleaded not guilty to the charges and was scheduled for trial on August 14, 2008.

On the morning of trial, the District Judge had a discussion in chambers and on the record with McIntosh, his counsel and the attorney for the Government. The pertinent portions of the discussion were as follows:

> THE COURT: Okay. Mr. McIntosh it has come to my attention that you have two prior convictions. One in 1999 in this district and one in Mississippi in 2005. But on -- both of those are felony convictions, drug convictions. Under the statute, Congress mandates that if you are convicted in this case, and if you are convicted of five kilograms or more that I have no choice but to give you life. It's mandatory life. They don't give me any discretion. Do you understand that[?]
>
> THE DEFENDANT: Yes.
>
> THE COURT: Your attorney has explained that to you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: It[']s also my understanding under the guidelines, which I do have a little more

discretion over, that your guidelines are 360 to life. But the guidelines wouldn't come into play if the jury finds five kilograms or more and finds you guilty. I will have no discretion but to give you life.

THE DEFENDANT: Yes.

THE COURT: How old are you?

THE DEFENDANT: 36.

THE COURT: The government indicates that they have offered for you to cooperate with them. And that would be the only avenue that I would have, if you did cooperate with them. Because then they could file a motion saying you cooperated and that would be the only avenue I would have to have discretion to give you a sentence that I believe would be reasonable for your case. Without a motion from the government saying you have cooperated I am required to give you life. Has your attorney explained that to you[?]

THE DEFENDANT: Yes.

THE COURT: So, you know, I always get these nice letters from people, family and friends. And it won't matter, all of his family and friends telling me you were a really great person and you did really great things for the community and children. And maybe that is true about you. But I would never be able to consider all of that when I was deciding what an appropriate sentence would be. Because Congress says no, he gets life in this. I want you to understand that. Do you have something to add?

MR. VALLAS: That Deborah had offered a factual resume that would have been less than five kilos of powder cocaine.

…

THE COURT: Also that would have take[en] it out of the mandatory of life without parole. Is that right?

3

MS. GRIFFIN: That's correct.

THE COURT: With an offer of if you did substantially cooperate, the government may recommend a certain number of years, but upon their motion for substantial cooperation it becomes my decision what an appropriate sentence should be and I am no longer required the follow the statute or follow the government's recommendation. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you have talked with your attorney about that? Because today is, you know, these next two days -- I don't have to emphasize to you, your life is basically at stake. In the mix two days, the rest of your life. And I want to make sure you have thought it through. You seem like an intelligent man. That you can think [t]his thing through, what is in your best interest to do. Do you want more time to talk with your attorney? . . .

THE DEFENDANT: Yes, I would like to talk to my attorney for a second.

(Doc. 132 at 2-4). Following a discussion between McIntosh and

his counsel, they appeared in Court and advised that McIntosh

desired to enter a guilty plea. During the plea colloquy that

followed, McIntosh acknowledged that he wished to plea to count

one of the indictment, conspiracy to possess with intent to

distribute 4.5 kilograms of cocaine. McIntosh also indicated

that nobody had tried to force his to enter a guilty plea, that

he was satisfied with his counsel's representation, and that he

understood that there was a mandatory minimum of ten years for

the offense unless he provided substantial assistance to the

government and the government recommended a lesser sentence.

(Doc. 132 at 6-8).

McIntosh's sentencing was conducted on March 19, 2009. Counsel for the government advised that although McIntosh had not provided substantial assistance, he did attempt to cooperate; thus, pursuant to the plea agreement, the government requested that McIntosh be sentenced to the statutory mandatory minimum sentence of 120 months. (Doc. 133 at 14). After hearing from McIntosh, his witness and his counsel, the Court sentenced McIntosh to 120 months imprisonment, to be followed by eight years of supervised release. McIntosh was also ordered to pay a special assessment of $100. (Id. at 16).

**McIntosh's Petition**

In McIntosh's latest petition[2] before the court, he raises four ineffective assistance of counsel claims, namely that: 1) prior to the guilty plea, his trial counsel failed to adequately pursue potentially beneficial defense witness, Mr. Brown; 2) prior to the guilty plea, his counsel failed to adequately pursue

---

[2] McIntosh's first two petitions were not on the Court's current form required for §2255 actions; thus, he was directed to refile. Following the filing of his third petition, the government argued that this action should be dismissed as untimely. The Court determined that McIntosh's initial filing, though defective, was timely filed, and that McIntosh may have been mislead by the Court's order directing him to refile on the Court's current form by May 10, 2010, which was beyond the applicable limitations period. (Doc. 128).

potentially beneficial defense witness, Mr. Dorch [3]; 3) his counsel failed to object to the Court's involvement in the plea negotiations; and 4) after his guilty plea, his counsel failed to file a motion to compel the Government to file a substantial assistance-based motion for downward departure. (Doc. 130).

In the government's response in opposition (Doc. 137), the government argues that McIntosh's ineffective assistance of counsel claims based on facts occurring *prior* to his guilty plea (Claims 1, 2, and 3), were waived when he voluntarily pleaded guilty. (Id. at 5). The government also asserts that while the Court's participation in plea negotiations arguably violated Rule 11, McIntosh cannot demonstrate that his counsel was ineffective for failing to object to said violation. According to the government, McIntosh cannot establish the first prong of the Strickland v. Washington 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) test because McIntosh's counsel was in agreement with the Court that a plea rather than a trial was in his client's best interest; thus, it was a strategic decision. (Id. at 6-8). In addition, the government asserts that McIntosh's final claim, that his counsel was ineffective for failing to file

---

[3] McIntosh contends that both witnesses would have supported his defense of mere association as opposed to actual participation in the drug conspiracy. (Doc. 130).

a motion to compel the government to file a motion for downward departure should be denied because McIntosh did not allege that the government's decision was based on an unconstitutional motive. (Id. at 11-12).

I.   **ANALYSIS**

   A. **Habeas Standard**

Habeas relief is an extraordinary remedy which "may not do service for a[] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982). A petitioner who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id., 456 U.S. at 164.  Unless a claim alleges lack of jurisdiction or a constitutional error, the scope of collateral attack has remained extremely limited. Addonizio v. United States, 442 U.S. 178, 185, 99 S. Ct. 2235, 2240, 60 L. Ed. 2d 805 (1979).

In general, claims not raised on direct appeal may not be considered on collateral attack.  A petitioner can, however, overcome his procedural default of claims not raised on direct appeal.  The burden a petitioner must meet differs, depending upon the type of claim he raises.  First, "non constitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with

the rudimentary demands of fair procedure." Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). However, a petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990). A meritorious claim of ineffective assistance of counsel can constitute cause. U.S. v. Nyhuis, 211 F. 3d 1340, 1344 (11th Cir. 2000).

## B. Ineffective Assistance of Counsel Standard

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; Strickland, 466 U.S. at 684-86. To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 687-88. Thus, a petitioner must establish both prongs of the Strickland test. Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001). With respect to the deficient performance prong, the petitioner must show that his counsel made errors so serious that he was not functioning as the

8

counsel guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Of course, there is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Id., 466 U.S. at 689. Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. Id.

In addition to deficient performance, a petitioner asserting an ineffective assistance of counsel claim is also required to demonstrate prejudice. Purvis v. Crosby, 451 F.3d 734, 743 (11th Cir. 2006). Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. It is not enough for the petitioner to show that the error had some conceivable effect on the outcome of the proceeding. Rather, the petitioner must show that the result would have been different. Id., 466 U.S. at 693.

The Supreme Court has held that the Sixth Amendment right to effective assistance of counsel extends to plea negotiations. Missouri v. Frye, 132 S. Ct. 1399, 1404-08, 182 L. Ed. 2d 379 (2012). "Thus, criminal defendants are 'entitled to the effective assistance of competent counsel' during plea negotiations." Frank v. United States, 2013 U.S. App. LEXIS 13370, *4 (11th Cir. 2013) (citation omitted).

**C. Guilty Plea Principles**

Once a criminal defendant enters a guilty plea, he waives all nonjurisdictional challenges to the conviction's constitutionality and only an attack on the voluntary and knowing nature of the plea can be raised. See McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 1449, 25 L. Ed. 2d 763 (1970); United States v. Betancourth, 554 F.3d 1329, 1332 (11th Cir. 2009) (finding that an unconditional guilty plea waives all nonjurisdictional challenges to a defendant's conviction).  Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508, 104 S. Ct. 2543, 2546-2547, 81 L. Ed. 2d 437 (1984).  Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 772, 102 L. Ed. 2d 927 (1989).

Rule 11 of the Federal Rules of Criminal Procedure provide that the government and the defendant "may discuss and reach a plea agreement". Fed. R. Crim. P. 11(c)(1).  A plea of guilty will be deemed voluntary, if before a guilty plea has been accepted, the "court address[es] the defendant personally in open court and determine[s] that the plea is voluntary and did

not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). In the Eleventh Circuit, there is "a 'strong presumption' that statements made by the defendant during his plea colloquy are true." United States v. Cardenas, 230 Fed. App'x 933, 935 (11th Cir. 2007) (citing United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994)). "[T]herefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" Cardenas, 230 Fed. App'x at 935 (quoting United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)).

While a defendant and the government may engage in plea negotiations, Rule 11(c)(1) provides that "[t]he court must not participate in [plea] negotiations. Fed. R. Crim. P. 11(c)(1); United States v. Tobin, 676 F.3d 1264, 1307 (11th Cir. 2012). The Eleventh Circuit has observed that judicial involvement in plea discussions is an issue that implicates the integrity of criminal proceedings and that:

> (1) judicial participation in the plea process may coerce the defendant into accepting a proposed agreement or entering a plea of guilty involuntarily; (2) judicial participation may affect the court's impartiality; and (3) judicial participation affects the appearance of impartiality.

United States v. Castro, 2013 U.S. App. LEXIS 11852 (11th Cir. 2013) (citing United States v. Casallas, 59 F.3d 1173, 1178

(11th Cir. 1995); <u>Tobin</u>, 676 F.3d at 1306.  Accordingly, not even a court's well-intentioned concern that the defendant be thoroughly apprised of the situation will excuse judicial participation in plea discussions. <u>Tobin</u>, 676 F.3d at 1307.

### D. <u>Discussion</u>

Upon a review of the issues raised by McIntosh, the undersigned finds that the only arguably meritorious issue is his claim regarding judicial participation in plea negotiations, and his counsel's failure to object to the same.  As noted <u>supra</u>, the government concedes that there was improper judicial participation, but contends that trial counsel's conduct was not deficient because he believed it was in McIntosh's best interest to enter a guilty plea, and as a result, he did not object to judicial participation.  The question before the Court then is whether counsel's failure to object to judicial involvement in the plea negotiations constitutes ineffective assistance of counsel.

As noted <u>supra</u>, to establish that counsel's performance was deficient, a petitioner must meet a high burden.  "There is a strong presumption that counsel's performance was reasonable and adequate." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005).  To overcome that presumption, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." <u>Chandler v. United States</u>, 218 F.3d

1305, 1315 (11th Cir. 2000) (en banc). "Because this standard is objective, it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight. The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." Gordon v. United States, 518 F.3d 1291 (11th Cir. 2008) (internal citations omitted) (citing Roe v. Flores-Ortega, 528 U.S. 470, 481, 120 S. Ct. 1029, 1037, 145 L. Ed. 2d 985 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.")).

In Djenasevic v. United States, 425 Fed. App'x 834 (11th Cir. 2011), a case that bears some similarity to the case at hand, the petitioner argued that he pleaded guilty, due in part, to impermissible judicial interference and that his counsel did not protect his interests during the process, thereby depriving him of effective assistance of counsel, and resulting in a coerced plea. The court, in a per curiam decision, found the performance by the petitioner's counsel to be ineffective. In reaching this conclusion, the court observed that shortly after the defendant's guilty plea, he requested that his counsel file a motion to withdraw his guilty plea, and that his counsel withdrew from the case instead. Id., 425 Fed. App'x at 837. The court held that the failure of the petitioner's counsel to file a proper motion requesting such relief based upon the clear

violation of Rule 11 was "ineffectiveness of counsel". Id.; see also Tobin, 676 F.3d at 1307 (observing that "a district court's suggestion that a defendant look into pleading guilty may give the impression that the district court has already taken a position regarding the question of guilt and that this can undermine the defendant's confidence in the neutrality of the tribunal and the fairness of the subsequent proceedings.")

In this case, McIntosh does not contend and there is no evidence that he asked his attorney to file a motion to withdraw his guilty plea. However, given Rule 11's total prohibition on judicial involvement in plea discussions, and the grave dangers it is designed to avoid, namely coerced guilty pleas as well as the erosion of judicial impartiality and appearance of impartiality, see generally United States v. Allen, 305 Fed. App'x 654 (11th Cir. 2008), the crux of the matter is whether it was reasonable for McIntosh's counsel to acquiesce in the Rule 11 violation because he felt it was in McIntosh's best interest. In his petition, McIntosh contends that "[t]he trial judge's in-chambers colloquy indicated to Mr. McIntosh that trial judge desired to have him plead guilty or else the trial judge would have no option than to impose a life sentence if he is convicted at trial. The trial judge's aforestated in-chambers colloquy with Mr. McIntosh was the major factor affecting Mr. McIntosh's decision to plead guilty." (Doc. 130 at 11). The undersigned

finds that because ensuring that a guilty plea is free of coercion is one of the core objectives of Rule 11, counsel's failure to object to conduct that arguably tainted the voluntariness of the plea cannot be deemed reasonable. See generally United States v. Monroe, 353 F.3d 1346, 1354 (11th Cir. 2003). (The three core objectives of rule 11 are: "(1) ensuring that the guilty plea is free of coercion; (2) ensuring that the defendant understands the nature of the charges against him; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea."). Accordingly, the fact that McIntosh's counsel believed that he was acting in his client's best interest by not objecting to the Rule 11 violation is of no consequence given that judicial participation in plea agreements can lead to coerced guilty pleas and are therefore strictly prohibited.

In Gordon v. United States, 518 F.3d 1291 (11th Cir. 2008), the Eleventh Circuit observed that:

> Although it is possible for commission of a single error to amount to ineffective assistance, this circumstance "is clearly the exception and not the rule." Chatom v. White, 858 F.2d 1479, 1485 (11th Cir. 1988). To ground a claim of ineffective assistance, a single error "'must be so substantial as to stamp [counsel's] overall performance with a mark of ineffectiveness.'" Id. (quoting Birt v. Montgomery, 725 F.2d 587, 597 (11th Cir. 1984) (en banc)).
>
> When a claim of ineffective assistance is based on a failure to object to an error committed

by the district court, that underlying error must at least satisfy the standard for prejudice that we employ in our review for plain error. Compare United States v. Underwood, 446 F.3d 1340, 1343-44 (11th Cir. 2006) (third part of plain error analysis required defendant to establish "a reasonable probability of a different result" at sentencing), with Gilliam v. Sec'y, Dep't of Corr., 480 F.3d 1027, 1033 (11th Cir. 2007) (prejudice standard of Strickland requires that there be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (internal quotation marks omitted)); see also United States v. Nash, 438 F.3d 1302, 1304 (11th Cir. 2006). The failure to object to a single error that is either unobvious or nonprejudicial does not "stamp [counsel's] overall performance with a mark of ineffectiveness." Chatom, 858 F.2d at 1485. It would be nonsensical if a petitioner, on collateral review, could subject his challenge of an unobjected-to error to a lesser burden by articulating it as a claim of ineffective assistance. Cf. United States v. Caputo, 978 F.2d 972, 975 (7th Cir. 1992) (not every plain error rises to the level of an error that "leaps out at the reader" or "condemns the lawyer who failed to bring it to the judge's attention of professional incompetence").

Gordon, 518 F.3d at 1298.

Thus, a finding that counsel's performance was deficient does not end the inquiry. To establish a claim for ineffective assistance of counsel, McIntosh is also required to show prejudice. In other words, he must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d

203 (1985).

The Eleventh Circuit, in United States v. Casallas, 59 F.3d 1173, 1177 n.8 (11th Cir. 1995), and later decisions, took the position that Rule 11(c)(1) prohibits participation of the judge in plea negotiations under any circumstances, and that while other circuits recognized harmless error in the context of judicial participation, this Circuit did not. Djenasevic, 425 Fed. App'x at 836. Recently however, in Davila v. United States, 569 U.S. ____ (2013), the U.S. Supreme Court addressed the issue of whether a violation of Rule 11(c)(1) results in the automatic vacation of a guilty plea. In that case, the petitioner argued that the Magistrate Judge's violation of Rule 11(c)(1) should result in an automatic vacatur of his guilty plea. The Court concluded that nothing in Rule 11's text indicated that the ban on judicial involvement in plea discussions, if dishonored, demands automatic vacatur without regard to case-specific circumstances. The Court also observed that Rule 11(h) is specifically designed to stop automatic vacaturs. The Court held that in assessing Rule 11 errors, a reviewing court must take account of all that transpired in the trial court.

In the instant case, the Court must made a determination of whether, taking into account the circumstances of the case, McIntosh has established actual prejudice. In other words,

whether he has established that absent his counsel's conduct in not objecting to the Rule 11 violation, he would have insisted on going to trial. Accordingly, in order to resolve this issue, this matter is hereby set for an evidentiary hearing before District Judge Kristi Dubose on **September 10, 2013** at **10:00 a.m.** in Courtroom 5A. Should the Court determine that McIntosh has established actual prejudice so as to establish ineffective assistance of counsel, his petition will be granted, and "the case will be reassigned to a new district judge who shall convene a hearing and determine whether [McIntosh] wishes to withdraw his guilty plea.[4] If [McIntosh] elects to withdraw his

---

[4] To the extent the District Judge finds actual prejudice and grants McIntosh's petition, the remaining issues raised in his petition will be moot. Assuming arguendo that the District Judge does not find actual prejudice with respect to the Rule 11 violation, the remaining three claims are not meritorious. In claims one and two, McIntosh contends that his counsel failed to adequately explain to him the significance of the potential testimony of two possible defense witnesses, namely Mr. Brown and Mr. Dortch, in helping to contradict the prosecution's case-in-chief concerning McIntosh's alleged involvement in the cocaine distribution network. (Doc. 130 at 14). McIntosh's claim fails the Strickland analysis because his counsel's alleged failure to stress potential defense witnesses does not amount to constitutionally deficient performance. In an affidavit filed with the government's response, McIntosh's trial counsel averred that upon reviewing the government's discovery and speaking with McIntosh, he did not agree that the referenced individuals were strong witnesses, and he was concerned about McIntosh's association with various people involved in the conspiracy and the Government's proof, including documentation, phone records, and witnesses. (Doc. 137 at 14). Thus defense counsel's failure to stress the witnesses was a tactical

guilty plea, the district court shall vacate his conviction and sentence" and proceed to schedule the case for a trial. <u>See</u> <u>Djenasevic</u>, 425 Fed. App'x at 837.

    **DONE** this **12th** day of **August, 2013.**

                                **/s/ SONJA F. BIVINS**
                               **UNITED STATES MAGISTRATE JUDGE**

---

strategy and cannot form the basis of an ineffective assistance of counsel claim.

    Likewise, McIntosh's claim that his counsel was ineffective for failing to file a motion to compel the government to file a motion for downward departure is also patently without merit. It is clear that the Government, not a defendant, may, at its sole discretion, file a motion for downward departure from the guidelines range under §5K1.1 or from a statutory minimum sentence under § 3553 based on a defendant's substantial assistance. <u>See</u> USSG § 5K1.1; 18 U.S.C. § 3553(e); <u>see also</u> <u>Wade v. United States</u>, 504 U.S. 181, 185, 112 S. Ct. 1840, 118 L. Ed. 2d 524 (1992)("[I]n both §3553(e) and § 5k1.1 the condition limiting the court's authority gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted."); <u>United States v. Dorsey</u>, 554 F.3d 958, 961 (11th Cir. 2009) ("[A] district court cannot grant a downward departure for substantial assistance absent a motion by the government.").